IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**PAUL JARAMILLO,**

      Plaintiff,

vs.                                            Civ. No. 99-1446 BB/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

      Defendant.


**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

l.   Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing.  The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner

---

[1]   Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

applied correct legal standards in making his findings.  Williams v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

  2. Plaintiff applied for Disability Insurance Benefits on June 7, 1996.  Tr. 137-139.  The application was denied initially and on reconsideration.  Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ).  A hearing was held before the ALJ at which Plaintiff and his attorney appeared and the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 30.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Tr. 5.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

  3.  Plaintiff was born on March 1, 1947.  He alleges that he has been unable to work since September 4, 1993 due to a back injury.  He graduated from high school and has some college credits.  He has past work experience as a warehouse supervisor and product dispatcher.

**Issues**

  4. Plaintiff alleges that the ALJ made multiple errors.  Plaintiff's allegations include the following: 1) Plaintiff met his burden of proving that he satisfied Sec. 1.05C of the Appendix 1 Listing; 2) The ALJ did not properly evaluate the credibility of

Plaintiff's complaints of pain; 3) Based upon the testimony of the vocational expert, Plaintiff is unable to work; and 4) the ALJ should have found Plaintiff disabled based upon his physicians' opinions.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes him from returning to his past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering his age,

education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

  7. To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that he is not engaged in substantial gainful employment;  (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that he has met or equaled a listing, he must show at step four that he is unable to perform work he had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience.  If a determination of disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

  8. Upon reaching the fifth step of the sequential evaluation

process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

  9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert

testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.  Plaintiff asserts he met Listings of Impairment Sec. 1.05C.  The Social Security regulations describe the disabilities in the Listing of Impairments as "impairments which are considered severe enough to prevent a person from doing any gainful activity." Knipe v. Hecker, 755 F.2d 141, 145 (10th Cir. 1998); 20 C.F.R. Sec. 404.1525(a)(1982).  Plaintiff has the burden of proving that his condition satisfied all the criteria of an impairment listed in Appendix 1 of the Regulations.  Subjective complaints alone are not sufficient. See Sullivan v. Zebley, 493 U.S. 521, 534 n.14(1990). Thus, to meet Section 1.05C, Plaintiff must show he has a vertebrogenic disorder such as a herniated nucleus puplosus or spinal stenosis with all of the following persisting for 12 months; pain, muscle spasms, significant limitation of motion of the spine, significant motor loss, muscle weakness, sensory loss and reflex loss.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.05C.

11.  A review of the record clearly shows that substantial evidence supports the ALJ's decision that Plaintiff's condition did

not satisfy Section 1.05C for 12 months.  Plaintiff's injury occurred on or about September 12, 1993.  Ten days later he was admitted to Guadalupe Medical Center and discharged four days later.  Tr. 182.  At that time he was diagnosed with a "very small centrally herniated disk at L5-S1."  Id.  Upon discharge, he had no "real radicular pain", minimal muscle tenderness and no neurological findings.  Tr. 182.  In March of 1994 he underwent a consultative examination by Dr. Barry M. Diskant.  Plaintiff had normal reflexes and there was no weakness found of any muscles in the lower extremities.  Tr. 193.  The x-rays taken showed mild narrowing and degenerative changes at L5-S1.  In 1995 and 1996 his treating physician, Dr. Lloyd Garland, a neurosurgeon could not prove the existence of a "frank disc herniation", compression of the thecal sac or nerve root displacement.  Tr. 216, 219, 222.  Further, during this time his examinations of the Plaintiff showed no paravertebral muscle spasm, muscle atrophy, weakness or fasciculation.  Tr. 223.  Further he found no sensory deficits.  Dr. John Paul Theo found in July of 1996 that Plaintiff had no sensory loss, motor weakness or disturbance in his reflex action.  Tr. 244.  After his surgery, Plaintiff's pain was significantly reduced and his x-rays "look beautiful."  Tr. 246.  Based on the medical records, there is no merit to Plaintiff's argument that he is disabled *per se.*

12.   Further, contrary to Plaintiff's assertions the ALJ

looked beyond the objective clinical findings in his analysis. See Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). The ALJ specifically found that Plaintiff had a pain producing impairment and the necessary "loose nexus." Id.  The ALJ specifically stated the reasons he found that Plaintiff's complaints were not credible and that he was not disabled.  He noted that Plaintiff's treating physician, Dr. Paul T. Turner, released the Plaintiff to return to work on August 8, 1994.  Dr. Turner determined by that October of 1994 the Plaintiff could work an eight hour day and 40 hour week provided he avoid work that required lifting more than 37 and ½ pounds, bending, and work above the shoulder level on a repetitive basis.  Tr. 196.  Plaintiff's subsequent treating physician, Dr. Lloyd Garland, opined that Plaintiff's condition had not improved and he had not gone to work because he was not motivated to do so. Tr. 218-219.  The ALJ also noted that Plaintiff's daily work activities indicate he is not disabled.  After the accident he attended college and earned over 50 credit hours.  He is able to work at the computer for an hour or more.  He has been released to perform housework and is able to vacuum and mow the lawn.  Further, contrary to Plaintiff's assertions the ALJ specifically referred to the document containing Plaintiff's work history in his analysis of Plaintiff's credibility.  Tr. 25.

    13.  Plaintiff argues that the ALJ based his credibility finding on a statement taken out of context.  The statement made by the ALJ was that the "primary reason Mr. Jaramillo had not returned

to some form of work was lack of motivation..." Tr. 26. In reviewing the context of Dr. Garland's statements, there is a basis for this statement by the ALJ. Dr. Garland wrote:

> I find it difficult to make this recommendation particularly since Mr. Jaramillo has been off of work since September of 1993 with little if any objective neurological deficits. He only made an attempt to return to work one day. This was a year after his original injury. I feel like that there is a certain amount of lack of motivation which is going to color the eventual outcome of any type of surgical intervention." Tr. 219.

A little over a month later Dr. Garland noted that "he does not want to have the surgery, but he really is not very anxious to get back to work either." Tr. 218. Regarding the ALJ's reference to Plaintiff's "left" rather than right leg, Plaintiff did have some left leg complaints. If he mistakenly wrote left instead of right, his error is *de minimus*. The record shows that the ALJ reviewed all the medical findings of record in reaching his decision.

14. Finally, on the credibility issue, Plaintiff argues that the ALJ should have accepted the vocational expert's responses to hypothetical questions which assumed he was required to lay down during the work day. The only evidence in the record of this is Plaintiff's testimony. The evidence of the record as a whole does not support this assertion. Plaintiff's treating physicians did not state such a limitation. Nor did the Plaintiff, as indicated in the doctor's notes, tell his physicians that he needed to rest so often. The ALJ was correct in not adopting the vocational

expert's opinion based on hypothetical questions which assumed he was required to lay down during the work day.  See also Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993)(hypothetical questions which assume unsupported allegations are not binding on the ALJ); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)(ALJ need only present to vocational expert those limitations that the ALJ finds are established by the evidence).

15.   The ALJ correctly discounted Dr. John Paul Theo's opinion that Plaintiff was not capable of working.  Tr. 274.  As the ALJ noted in his opinion he gave controlling weight to Dr. Theo's objective findings.  Dr. Theo notes that Plaintiff's pain had significantly reduced after the surgery.  Tr. 246.  He further noted that Plaintiff's x-rays "look beautiful."  According to notes to Dr. Theo from Plaintiff's physical therapist, Plaintiff could exercise 45 minutes.  Tr. 273.  The objective findings indicate Plaintiff can work.  Dr. Theo's conclusion in a note to Plaintiff's attorney four days before the administrative hearing is that Plaintiff is not capable of any work.  A conclusion not supported by specific findings is properly rejected by the ALJ.  See Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994).

16.   Further, the opinions of other physicians was that Plaintiff was capable of working.  Two consultative physicians who reviewed the medical records found that Plaintiff could perform the full range of light work.  Tr. 225 and 256.  Plaintiff's treating

physician, Dr. Turner, found that Plaintiff was capable of returning to the work force, with some limitations, in February of 1994 and thereafter.  Tr. 194-197.

17.  Finally, in the Division of Vocational Rehabilitation records Plaintiff was considered not to be severely disabled.  Tr. 213.  It was also noted that Plaintiff planned on working as a car salesman only until he started attending college.  Tr. 205.  He carried a full class load and made good grades.

18.  To conclude, Plaintiff's inability to work without some pain or discomfort is not a sufficient reason to find that Plaintiff was disabled within the meaning of the Act.  See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

### Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**